IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| NATHAN ROWAN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>MACK DADDY CONSULTANT INC., a Florida corporation, and MONSTER RESERVATIONS GROUP, LLC, a South Carolina company,<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Nathan Rowan ("Plaintiff Rowan" or "Rowan") brings this Class Action Complaint and Demand for Jury Trial against Defendant Mack Daddy Consultant Inc. d/b/a Trade Show Travel Company ("Defendant Trade Show Travel Company" or "Trade Show Travel Company") and Defendant Monster Reservations Group, LLC d/b/a Monster Reservations Group ("Defendant Monster Reservations Group" or "Monster Reservations Group") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Rowan, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1. Plaintiff Rowan is a resident of Baltimore, Maryland.

2. Plaintiff Trade Show Travel Company is a Florida registered corporation headquartered in West Palm Beach, Florida.

3. Plaintiff Monster Reservations Group is a South Carolina registered company headquartered in Myrtle Beach, South Carolina.

**JURISDICTION AND VENUE**

4. This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

5. This Court has personal jurisdiction over Defendant Trade Show Travel Company because it is headquartered in this District and directed its wrongful conduct from this District toward Plaintiff. This Court has personal jurisdiction over Defendant Monster Reservation Group because it conducts business with Trade Show Travel Company in this District, sells travel plans from this District, and serves consumers located in this District. Venue is proper in this District because Defendant Trade Show Travel Company is headquartered here and the events giving rise to this action occurred from this District.

**INTRODUCTION**

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

11. According to online robocall tracking service "YouMail," 4.2 billion robocalls were placed in August 2025 alone, at a rate of 133.9 million per day. www.robocallindex.com (last visited September 7, 2025).

12. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules*

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

15. Mack Daddy Consultant Inc. operates using the d/b/a Trade Show Travel Company.[3]

16. Trade Show Travel Company sells travel packages to consumers throughout the US, including in Maryland where the Plaintiff is located.[4]

17. Defendant Trade Show Travel Company is the Florida-based telemarketing arm that made the unsolicited calls at issue, directly pitching travel packages to consumers.

18. Monster Reservations Group books and sells vacation packages for consumers throughout the US.[5]

19. Trade Show Travel Company sells travel packages on behalf of, and in partnership with Monster Reservations Group.

20. Trade Show Travel Company and Monster Reservations Group operate through an integrated business relationship that includes shared customers, coordinated sales processes, and joint financial arrangements.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://dos.sunbiz.org/scripts/ficidet.exe?action=DETREG&docnum=G21000014657&rdocnum=G21000014657

[4] https://tradeshowtravelco.com/about-us/

[5] https://www.linkedin.com/company/monster-reservations-group/about/

21. In a Better Business Bureau ("BBB") complaint from a consumer regarding a travel package sold by Trade Show Travel Company on behalf of Monster Reservations Group, Monster Reservations Group referred to Trade Show Travel Company as its Tradeshow team:

**Initial Complaint** — **Type:** Product Issues

**Date:** 06/18/2025 — **Status:** Answered

Complaint Regarding Monster Reservations Group (Trade show travel *** Lack of Contractual Transparency and Deceptive Sales Practices To Whom It May Concern,I am filing this complaint against Monster Reservations Group due to my recent experience purchasing a travel package from them that lacked any transparency regarding the terms and obligations of the agreement.I was sold a vacation package over the phone, but at no point did I receive a full or formal written contract specifying the services being offered, cancellation rights, refund policies, booking limitations, or restrictions. The only written confirmation I received was an email acknowledging payment. No material disclosures were included.When I attempted to clarify the scope of the package or request a refund based on these missing terms, I received vague responses and was referred back to oral representations made during the sales call. This conduct appears to reflect a pattern of deceptive business practices and has left me in a position where I do not know what I paid for or what rights I have.I believe Monster Reservations Group has engaged in:Failure to provide a clear and enforceable contract, I have several emails that show that I requested a written and definite contract and that the business never provided one.Misrepresentation and omission of material facts, by not presenting a full contract with all the terms defined, they are not complying with the consumer protection.Unfair or deceptive business practices under consumer protection standards. I tried to cancel the package the same day I received the confirmation as no contract was sent and their oral terms were incomplete when the sale was done online.I respectfully ask that the BBB record this complaint and assist me in seeking a resolutionideally a full refundor, at minimum, a formal acknowledgment of my cancellation and a copy of the alleged terms of service.Thank you for your assistance.Sincerely, ******* E. *******

**Business Response**

**Date:** 06/30/2025

Thank you for speaking with us. We provided a detailed welcome letter to help clarify your package, and understand you were looking for even more information. Our Tradeshow team also attempted to connect with you but was unable to reach you. We appreciate your feedback and consider the matter addressed. Please feel free to reach out if you need any further assistance. [6]

22. Plaintiff Rowan was told by an employee during a sales call with Trade Show Travel Company that Trade Show Travel Company is the sister-company of Monster Reservations Group.

[6] https://www.bbb.org/us/sc/myrtle-beach/profile/travel-agency/monster-reservations-group-llc-0593-90038192/complaints?page=6

23. In fact, another consumer alleged that Monster Reservations Group is the sister company of Trade Show Travel Company in a BBB complaint:

**Initial Complaint**

**Date:** 11/08/2024

**Type:** Sales and Advertising Issues

**Status:** Answered

Monsters reservation group has been calling me for years to sell me vacation packages. I had originally bought a vacation package in 2019 before Covid that expired while Covid was going on. So, in 2021 when they called, I upgraded the original package that I had purchased in 2019. I may have paid about $399 but I do not recall the original cost. And I think the upgrade in 2021 was $599. I can not remember but also can not find documentation as I never get any email confirmations for any of this. Then in 2023, they called again and were able to convince me to upgrade again so that I wouldn't ever have them expire. I paid $799 for this travel package with no expiration date in hopes that I would never hear from them again. Now, this year, I am currently getting harassed with phone calls on a weekly basis. I get calls weekly and if I don't pick up I will get 2 to 3 calls per day with no voicemail ever left and always from a different area codes. When I do pick up, I am told that I have 2 vacation packages, whcih was when I started fighting for information. I keep trying to expalin that I never wanted mutliole vacation packages, I was mislead and when i request documentation of any of my purchase, they dont provide me. On some calls, I get transferred tl the same "manager" that insist I pay $599 to keep the package I dont want. I am fedup and tired of calls. I would like someone to provide me with proof of what I purchased and what I paid or I would like the money back for the 1 package they have records of. Monsters reservation group is a a sister company to Trade show Travel out of *******. I called Trade Show Travel, and they were able to provide me with an email of my vacation package and had documentation of the 1 vacation package I purchased from them in 2023 for $799. This vacation package was purchased through monsters vacation group but they didn't have proof of anything else, other then a purchase from 2010.

**Business Response**

**Date:** 11/13/2024

We have been able to speak with our guest and ensure she is placed on the Do Not Call list. We also sent her a detailed Welcome Letter that lists all the vacations she has access to. Whenever she is ready, we look forward to getting her on her vacations - we can be reached by either phone or email! [7]

24. In Google reviews, consumers have posted complaints about Monster Reservations Group to Trade Show Travel Company, who acknowledged and responded to those complaints. For example:

[7] https://www.bbb.org/us/sc/myrtle-beach/profile/travel-agency/monster-reservations-group-llc-0593-90038192/complaints?page=28

TradeShowTravelCo

2708 N Australian Ave Suite 2, West Palm Beach, FL 33407, United States

Write a review

4.4 ★★★★★ 942 reviews

**Kathy James**
2 reviews

9 months ago

This company, Monster Reservation Group, is a scam. I was told when they sold me the package all presentations after the first one would be waived. I was told I wouldn't have to attend a presentation for all 7 "free" vacations. When I tried to book, they said that wasn't true. They tried to suggest for me to book an 8 day/7 night trip, but that would cost more money because it was not the promotional offer. Since I am married my husband has to attend all 7 presentations with me, but the issue is he doesn't always vacation with me. She argued with me that surely in the next 10 years my husband could go on a vacation with me. I told her I don't want to wait 10 years to use my "free" vacations. I know this is a timeshare scheme and I have owned timeshares in the past, but my frustration is they falsely sold me the package under conditions they couldn't uphold. After an hour on the phone, I finally got my money back when I told them I was going to call my attorney because they were fraudulent. I would not recommend!! [8]

**mark w**
Local Guide · 15 reviews · 1 photo

10 months ago

I was told by Wyndham resorts not to trust what this company and monster travel says. I was told I get 7 vacations but the first vacation I had to take a time share tour. But that would be it. I called today and they told me who I talked to was wrong. However, I let her know I recorded the conversation because I am not that trusting. Glad I did because what they did was fraud. What I did is checked what they told me and then it didn't say it in my email they sent. So, I called back and recorded the conversation. So, I didn't get it in writing but I do have the recording. I am sending them a small clip of the recording.

🙏 1

TradeShowTravelCo (Owner)
9 months ago

Thank you so much for taking the time to leave us feedback. We would be grateful if you could share more details of your experience so we can address any issues and improve our service along with making it right. Please contact us directly with your feedback at [9]

25. Monster Reservations Group and Trade Show Travel Company operate as part of a common enterprise, jointly profiting from the marketing and sale of travel plans, using shared

[8] https://www.google.com/search?q=%22Trade+Show+Travel+Co

[9] Id.

communication channels, personnel, and sales infrastructure. This interconnected relationship supports a finding of joint and several liability for the violations of the TCPA alleged herein.

26. The Federal Communication Commission has instructed that companies such as Monster Reservations Group may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

27. The policy underlying the FCC's ruling applies with full force here: allowing Monster to escape liability by outsourcing its telemarketing to Trade Show Travel would leave consumers without an effective remedy and make enforcement substantially more expensive and less efficient, requiring consumers to sue multiple related entities separately to obtain relief.

28. Monster Reservations Group is similarly liable for the unlawful telemarketing conduct that resulted in the filing of this Complaint.

29. Monster Reservations Group benefits financially from the sales that are generated by Trade Show Travel Company.

30. Monster Reservations Group is aware, or should be aware that Trade Show Travel Company is placing unsolicited calls to consumers to generate business.

31. Consumers have posted complaints on the BBB page for Monster Reservations Group about unsolicited calls they received from Trade Show Travel, that Monster Reservations Group has acknowledged, including:

**Initial Complaint**

**Date:** 04/14/2025

**Type:** Product Issues

**Status:** Answered

Received cold call 3/21, Person identified herself as ****** from Reservations Group. One pitch line was that the condo stays, and all-inclusive trips could accommodate up to 6 people. I expressed interest in these trips for 3 adults and 2 children. Was assured that was no problem. NO mention that the condos and all-inclusive only applied to 2 adults and 2 children up to 12, up-grades required for the third adult and children 13+. IF I had been aware of these conditions and restrictions, I would NEVER have purchased this package. Transferred to ****** who confirmed that condo stays, and all-inclusive stays did include up to 6 people. NEVER disclosed that the third adult and children 13+ would be upgrades. I insisted on electronic and hard-copy documentation, which I was told I would receive a Welcome Letter shortly and should receive hard copy documentation in 7 -10 business days. Authorized credit card charge for travel package with understanding that I would receive written documentation on purchase and that my package covered a family of 5 with 3 adults and two children. Received pre-prepared Welcome Letter which DID NOT contain accurate Trip Details regarding my purchase. Over 5 days, I placed 7 phone calls to resolve this matter. Between 3/21 through 4/ 9, there's been an exchange of 32 emails. Monster Reservations Group/Trade Show Travel are engaged in consumer fraud and deceptive practices. Monster Reservations Group/Trade Show Travel have: 1) Failed to provide accurate, complete electronic and hard copy documentation regarding the travel package purchased; 2) Failed to provide Transparency on several critical topics including HIDDEN FEES reported as EXORBINATE ; 3) Failed to disclose that although a condo or resort could accommodate up to 6 people the travel package only included 2 adults and 2 children up to 12; and 4) Failed to work with me to resolve this matter in a timely manner.

**Business Response**

**Date:** 04/21/2025

Thank you for speaking with us. We are so glad we could help resolve your issues. If you have any more questions feel free to reach us at ****************************************[10]

[10] https://www.bbb.org/us/sc/myrtle-beach/profile/travel-agency/monster-reservations-group-llc-0593-90038192/complaints?page=13

**Initial Complaint**

**Date:** 03/13/2025

**Type:** Product Issues

**Status:** Answered

This company called with a great description of a travel package including several trips and a cruise. We paid $999 for this package. It was deducted as Trade Show Travel, but now they are calling as Monster Travel. Since we had to sit through a timeshare presentation in order to use the trips, we scheduled near our home. They told me I had to pay a refundable deposit of $150 so I gave my card information. This was to pay for the "free gift" from the ********* company. Instead, they deducted $298.66. I tried to call to find out why, but the number answers, puts you on hold, and hangs up. They do not send any type of paperwork, and it is very difficult to get information about what is available. They call, but it is not easy to remember everything they say.I do not like doing business this way, and am sorry I answered the first call from this company. Since it is almost impossible to use this package, I feel a refund should be made for the cost of the package plus the extra amount charged to my card. Response should be through email.

**Business Response**

**Date:** 03/19/2025

We sincerely apologize for any confusion or frustration. We have made six attempts to reach you but have been unable to connect. When setting your travel dates, a refundable deposit is required, which is also outlined in your confirmation email. We see that you have completed your vacation and received your deposit back. As a gesture of goodwill, we have added an additional trip to your package and look forward to helping you plan another great vacation. [11]

[11] https://www.bbb.org/us/sc/myrtle-beach/profile/travel-agency/monster-reservations-group-llc-0593-90038192/complaints?page=17

**Initial Complaint**

**Date:** 11/08/2024

**Type:** Sales and Advertising Issues

**Status:** Answered

Monsters reservation group has been calling me for years to sell me vacation packages. I had originally bought a vacation package in 2019 before Covid that expired while Covid was going on. So, in 2021 when they called, I upgraded the original package that I had purchased in 2019. I may have paid about $399 but I do not recall the original cost. And I think the upgrade in 2021 was $599. I can not remember but also can not find documentation as I never get any email confirmations for any of this. Then in 2023, they called again and were able to convince me to upgrade again so that I wouldn't ever have them expire. I paid $799 for this travel package with no expiration date in hopes that I would never hear from them again. Now, this year, I am currently getting harassed with phone calls on a weekly basis. I get calls weekly and if I don't pick up I will get 2 to 3 calls per day with no voicemail ever left and always from a different area codes. When I do pick up, I am told that I have 2 vacation packages, whcih was when I started fighting for information. I keep trying to expalin that I never wanted mutliole vacation packages, I was mislead and when i request documentation of any of my purchase, they dont provide me. On some calls, I get transferred tl the same "manager" that insist I pay $599 to keep the package I dont want. I am fedup and tired of calls. I would like someone to provide me with proof of what I purchased and what I paid or I would like the money back for the 1 package they have records of. Monsters reservation group is a a sister company to Trade show Travel out of *******. I called Trade Show Travel, and they were able to provide me with an email of my vacation package and had documentation of the 1 vacation package I purchased from them in 2023 for $799. This vacation package was purchased through monsters vacation group but they didn't have proof of anything else, other then a purchase from 2010.

**Business Response**

**Date:** 11/13/2024

We have been able to speak with our guest and ensure she is placed on the Do Not Call list. We also sent her a detailed Welcome Letter that lists all the vacations she has access to. Whenever she is ready, we look forward to getting her on her vacations - we can be reached by either phone or email! [12]

32. There are many complaints posted online from consumers about unsolicited calls they received from Trade Show Travel Company, including:

- "They called me over and over and I finally gave them $700. I said that that I want all sales calls to stop. Within 24 hours I received two more. When I complained about the calls they told me it could take up to 30 days. I was NOT told that. I want my money back. I have no trust in this organization."[13]
- "Thank you to all of the one star reviews and reviews on the BBB website. I will not be booking anything with this company. They call my phone several times today and when I finally answered they tried to sell me this "to good to be true" package. Yep, I'm not falling for it..."[14]

---

[12] https://www.bbb.org/us/sc/myrtle-beach/profile/travel-agency/monster-reservations-group-llc-0593-90038192/complaints?page=28

[13] https://www.google.com/search?q=%22Trade+Show+Travel+Co

[14] Id.

- "They cold-called me multiple times about a vacation package too good to be true, misrepresented their motives (we don't deal with timeshares = lie) and spoke so vaguely and scripted without clearly explaining how they got my info and what they want to sell me."[15]
- "Insanely Disrespectful, typical call center bs… talking over you and saying you get free vacations. Doesn't actually listen and then gives excuses why they won't take you off a list without you listening to their pitch haha , give me a break. We all know not real and I've asked to take off the list at least 5 times. A new rep calls me from a new number a week later. I hope they read this and realize what a class action lawsuit can do to their telemarking licensing."[16]
- "I'd like to know who SOLD my number to you!?!?"[17]
- "Just called me out of the blue to tell me my $500 purchase with them expired. People who lie like this for business should be put in jail. They rudely hung up on me when I was trying to get more information. They seem to have their scamming down to a science."[18]

33. Defendant Monster Reservations Group is liable under the TCPA for the unlawful telephone solicitations alleged herein under all three recognized theories of agency liability: actual authority, apparent authority, and ratification.

34. <u>Ratification</u>: Even if Monster did not pre-approve every specific call, Monster ratified Trade Show Travel's unlawful conduct by knowingly accepting the benefits of sales generated through the telemarketing campaign. Monster profited directly from purchases made by consumers in response to Trade Show Travel's calls, processed payments for those purchases, sent confirmation emails, and handled customer service issues. Despite receiving numerous consumer complaints about Trade Show Travel's calling practices through BBB and Google reviews, Monster failed to take meaningful corrective action and continued the business relationship, thereby ratifying the unlawful conduct.

---

[15] Id.
[16] Id.
[17] Id.
[18] Id.

35. Apparent Authority: Monster Reservations Group cloaked Trade Show Travel Company with apparent authority to make solicitation calls on its behalf. When Trade Show Travel employees called consumers, they represented that they were calling on behalf of Monster Reservations Group about Monster vacation packages. The transaction flow confirms this apparent authority: Trade Show Travel initiated the calls, but Monster processed the payments and sent confirmation emails. Reasonable consumers, including Plaintiff, understood the calls to originate from or be endorsed by Monster. Monster held itself out as the principal entity behind the vacation packages being sold, creating apparent authority for Trade Show Travel to act on its behalf.

36. Actual Authority: Monster Reservations Group exercises actual authority over Trade Show Travel Company's operations through their integrated business relationship. Consumer complaints demonstrate that Trade Show Travel employees identify themselves as working for Monster and refer customers to Monster's systems and personnel for customer service issues. Monster's website expressly authorizes telemarketing calls from "affiliates," indicating Monster's acknowledgment of authority relationships with telemarketing entities. The transaction processing flow—where Trade Show Travel solicits but Monster processes payments and handles fulfillment—demonstrates Monster's operational control over the sales process.

37. Monster Reservations Group's own website contains consent language stating customers agree to "receive telemarketing calls from an automated telephone dialing system, pre-recorded messages, and/or text messages on behalf of Monster Reservations Group, LLC and/or its affiliates," demonstrating Monster's acknowledgment that it authorizes affiliates to conduct telemarketing on its behalf.

38. In response to these calls, Plaintiff Rowan brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF ROWAN'S ALLEGATIONS

39. Plaintiff Rowan is the sole owner and user of his cell phone number ending in 5605.

40. Plaintiff Rowan registered, or had registered on his behalf, his cell phone number on the DNC on June 4, 2005.

41. Plaintiff Rowan has owned his cell phone number for over 20 years.

42. Plaintiff Rowan uses his cell phone number for personal use only as one would use a landline telephone number in a home, including to communicate with family and friends.

43. The calls that Plaintiff Rowan received from the Defendants were received more than 31 days after the Plaintiff registered his cell phone number on the DNC.

44. On August 27, 2025 at 10:49 AM, Plaintiff Rowan received an unsolicited call to his cell phone from 561-843-3433.

45. When Plaintiff Rowan answered his call, an employee introduced himself as Christopher Crouch, which matched the caller display on the call:




46. Crouch said that he was calling from Trade Show Travel Company.

47. Crouch explained that he was calling about a travel package that Plaintiff Rowan had allegedly never used, but Plaintiff could purchase a new package at a discounted rate.

48. Plaintiff Rowan explained that he was on his way to work and asked for additional details about who the package provider is.

49. Plaintiff Rowan wanted Crouch to email him additional details, which Crouch was unable or unwilling to do.

50. Plaintiff Rowan said that he would have to get back to Crouch if he was interested. He did not agree to receive any additional calls.

51. Crouch sent a text message to Plaintiff Rowan with his name and the website address for Monster Reservations Group:




52. Crouch is employed by Trade Show Travel Company, as per his Linkedin profile:



[19]

[19] https://www.linkedin.com/in/christopher-crouch-b30175a0/

53. Plaintiff Rowan received a 2nd unsolicited call to his cell phone on September 4, 2025 at 6:15 PM from 253-465-2081.

54. When Plaintiff Rowan answered this call, an employee said that they were calling about a travel package that Plaintiff allegedly purchased in the past, but it was never used.

55. The employee said that Plaintiff's account was about to be closed, but Plaintiff Rowan could purchase additional vacations.

56. Plaintiff stated that he would be interested to confirm which company he was on the phone with, as a name had not been provided.

57. Plaintiff Rowan was put on hold to speak to a supervisor, but the line disconnected.

58. At 6:16 PM on September 4, 2025, Plaintiff Rowan received another call from 253-465-2081.

59. When Plaintiff Rowan answered this call, an employee named Francis apologized for the line being disconnected and said that he was calling about an allegedly expiring vacation package.

60. Plaintiff Rowan was told that since he never used his vacation package and did not attend a required presentation, he could buy a new package but it would require a amenities tour of a property.

61. Plaintiff Rowan was told that this new package would cost $998.

62. Plaintiff Rowan explained that he was on his way to the airport and asked if he could receive additional details by email.

63. Francis dropped the price of the package to $849 and asked Plaintiff Rowan to pull over on the side of the road so Plaintiff could provide a credit card number.

64. When Plaintiff pulled over, he was transferred to a verifications employee who repeated what Francis had reviewed.

65. Plaintiff Rowan was told that he had to provide approval on a recorded line for the purchase of the travel package.

66. Plaintiff Rowan was then told that the company name is Trade Show Travel Company.

67. Plaintiff Rowan hung up before providing approval for the travel package.

68. Despite not providing approval, Plaintiff Rowan received confirmation of a payment on his credit card to Trade Show Travel Company:




69. Plaintiff Rowan also received an email from Trade Show Travel Company with a receipt for the travel charge of $849.

70. Plaintiff Rowan was upset and disturbed over the fact that his credit card was charged without his authorization.

71. Plaintiff Rowan sent an email to Trade Show Travel Company on September 4, 2025 at 7:00 PM requesting a refund and asking for his phone number to be removed from Trade Show Travel Company's call list, as well as any companies it is associated with:

72. On September 5, 2025 at 6:58 AM, Plaintiff Rowan received a vacation purchase confirmation email from Monster Reservations Group:

**Vacation Purchase Confirmation**
1 message

**Reservations** <reservations@monsterrg.com> Fri, Sep 5, 2025 at 6:58 AM
To: [redacted]
Cc: reservations@monsterrg.com

**Welcome Letter**




73. The email that Plaintiff received contains a link of available destinations:

Our team is at your service to ensure that you will encounter only smooth sailing and have the most memorable vacation possible. Our commitment while you are on your resort preview is to show you the benefits of vacation ownership in a fun, upbeat, and professional manner. If you have any questions or want to check availability, please contact summary one of our Guest Service Specialists at 1-888-556-1485.

We are constantly updating our destination list to give you new & exciting choices! For the most updated list of destinations available, please visit us HERE. Thank you for your trust and business. Vacation soon!

****Please Note**
: The charge for this vacation on your card statement will read 'Trade Show Travel Co.'**

74. This link leads to https://online.flippingbook.com/view/819626228/144/, which shows that it is owned/operated by Monster Reservations Group:



[20]

75. On September 5, 2025 at 12:39 PM, Plaintiff Rowan received a refund confirmation email from reservations@monsterrg.com:

[20] https://online.flippingbook.com/view/819626228/144/ - Page 144

THANK YOU FOR REACHING OUT

Receipt of Refund



**Dear Mr. Nathan Rowan,**

We have processed your refund for the amount of $849. We apologize for any inconvenience caused.

Please allow 3 to 5 business days for this refund to show in your account.

Feel free to contact summary us if you have any other questions or concerns. Our number is 1-888-556-1485 and we are available Mon-Fri: 9AM-11PM EST and Sat-Sun 9AM-7PM EST.

Thank you for your patience and your time,

**The Team at Monster Reservations Group**

**Date of Booking: 09-04-2025**

Total Price: $0

Amount Refunded: $849

76. Monster's conduct demonstrates it operates Trade Show Travel as its telemarketing arm while attempting to claim ignorance of the calling practices that generate its profits.

77. The fact that the solicitation was made by Trade Show Travel Company, but the purchase confirmation and refund confirmation emails were sent by Monster Reservations Group shows that the Defendants acted as a joint enterprise.

78. Plaintiff Rowan received 3 additional unsolicited calls to his cell phone despite his stop request from 253-465-2081 on September 5, 2025 at 6:32 PM, 7:20 PM and 8:33 PM:




79. Plaintiff Rowan has never provided his cell phone number to the Defendants and has never consented to receive calls to his cell phone from the Defendants.

80. The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of the Defendants has harmed Plaintiff Rowan in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

81. Seeking redress for these injuries, Plaintiff Rowan, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

**CLASS ALLEGATIONS**

82. Plaintiff Rowan brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Trade Show Travel Company and/or Monster Reservations Group more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

83. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries,

parents, successors, predecessors, and any entity in which any of the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Rowan anticipates the need to amend the Class definitions following appropriate discovery.

84. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class because he received calls as part of the same campaign resulting in calls to other Class members.

85. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Trade Show Travel Company placed multiple calls on behalf of Monster Reservations Group within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(b) whether the calls constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

86. **Adequate Representation**: Plaintiff Rowan will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Rowan has no interests antagonistic to those of the Class, and the Defendants have no defenses unique to Plaintiff. Plaintiff Rowan and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Rowan nor his counsel have any interest adverse to the Class.

87. **Appropriateness**: This class action is also appropriate for certification because the Defendants acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Rowan Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rowan and the Do Not Call Registry Class)**

88. Plaintiff repeats and realleges paragraphs 1-87 of this Complaint and incorporates them by reference herein.

89. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

90. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

91. The Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Rowan and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

92. The Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Rowan and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above.

93. As a result of Defendants' conduct as alleged herein, Plaintiff Rowan and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are

entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

94. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Rowan individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendants' actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Rowan requests a jury trial.

**NATHAN ROWAN**, individually and on behalf of all others similarly situated,

DATED this 10th day of September, 2025.

By: /s/ *Stefan Coleman*

Stefan Coleman
COLEMAN PLLC
18117 Biscayne Blvd
Suite 4152
Miami, FL 33160
(877) 333-9427

law@stefancoleman.com

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*